## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Korine Brown, | ) | |
| On Behalf of Herself and All | ) | |
| Others Similarly Situated, | ) | C. A. NO. 13-_____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Fidelity Management and Research Company | ) | |
| and Fidelity Investments Institutional | ) | |
| Operations Company, Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Korine Brown ("Brown"), by and through her undersigned counsel, alleges for her complaint as follows:

## I.    INTRODUCTION

1.    Fidelity Management and Research Company ("Fidelity Research") and Fidelity Investment Institutional Operations Company, Inc. ("Fidelity Institutional Operations") (collectively "Fidelity" or "Defendants"), are fiduciaries and parties in interest that engaged in fiduciary self-dealing in violation of the Employment Retirement Income Securities Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*

2.    Brown is a participant in the General Motors Personal Savings Plan (for hourly employees) ("GM Plan" or the "Plan").  As of December 31, 2011, the GM Plan had close to $6 billion in assets, and in excess of 100,000 plan participants.

1

3.      Plaintiff brings this class action on behalf of the GM Plan, and the participants in the plan, to recover "float income"[1] that Defendants failed to distribute solely for the benefit of the Plan, in violation of ERISA.

4.      As described below, Fidelity generates float income when Plan assets in the form of contributions, redemptions or transfers are placed in interest-bearing accounts controlled by Fidelity pending investments in or withdrawals from the selected investment option(s).

5.      Float income is an asset of the Plan under ERISA.

6.      Defendants had control over the Plan's assets pending investment in the selected investment options, transfers to new investment options, and distributions to participants, and exercised their discretion regarding those assets because they had discretionary control over the float income.  As such, Defendants were fiduciaries of the Plan under ERISA.  ERISA § 3(21), 29 U.S.C. § 1002(21).

7.      Defendants, in their capacity as servicers of the Plan, were also parties in interest under ERISA.  ERISA § 3(14), 29 U.S.C. § 1002(14).  Thus, any transactions involving plan assets with Defendants are considered party-in-interest transactions.

8.      As fiduciaries with discretion over plan assets, Defendants were required to act prudently and solely in the interest of plan participants, and were prohibited from using plan assets to increase their own compensation for administering the Plan.  ERISA § 404, 29 U.S.C. § 1104.

9.      As fiduciaries with discretion over plan assets, Defendants also were prohibited from engaging in or causing the Plan to engage in prohibited transactions involving plan assets

---

[1] As more fully described in paragraph 49 below, float income is the interest earned when contributions and disbursements are held temporarily in overnight accounts or disbursement accounts.

with plan fiduciaries or parties in interest.  ERISA §§ 506(a) and (b), 29 U.S.C. §§ 1106(a) and (b).

10.     Fidelity Institutional Operations breached its fiduciary duties, and engaged in or caused the Plan to engage in prohibited transactions involving plan assets, by using float income to pay its operating expenses and by failing to distribute float income solely for the interest of the Plan.

11.     Fidelity Research breached its fiduciary duties and engaged in or caused the Plan to engage in prohibited transactions involving plan assets when it transferred float income to Fidelity mutual funds that were investment options for the Plan, instead of to the Plan.  In addition, because Fidelity Research's investment manager fees paid by those mutual funds are computed based upon a percentage of the assets under management, by using the float income in this manner, Defendants used plan assets to increase Fidelity Research's compensation.

12.     Defendants, as parties in interest, engaged in prohibited transactions involving plan assets in violation of ERISA when they benefited from the foregoing activities.

13.     In *Tussey v. ABB, Inc.*, 2:06-CV-04305-NKL, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012), *amended in part sub nom. Tussey v. ABB Inc*., 06-4305-CV-C-NKL, 2012 WL 2368471 (W.D. Mo. June 21, 2012), *reconsideration denied*, 2:06-CV-04305-NKL, 2012 WL 5512389 (W.D. Mo. Nov. 14, 2012) [hereinafter "*Tussey*"], the Court concluded that Fidelity breached its fiduciary duties to participants in a defined contribution plan, known as the ABB PRISM Plans, by using float income in exactly the manner alleged by the Plaintiff here. Specifically, the Court held that Fidelity breached its fiduciary duties "when it failed to distribute float income solely for the interest of the Plan" and "when it transferred float income to the Plan's investment options instead of the Plan."

3

14.     Defendants' diversion of float income for the benefit of Defendants was not limited to the ABB PRISM Plans, but was done by Fidelity with respect to all of the defined contribution plans which it serviced.

15.     On information and belief, Defendants' practice of retaining float income for the benefit of Defendants and Fidelity's mutual funds, was not disclosed to the plan participants, or to the fiduciaries responsible for the administration of the Plan or permitted under the terms of Fidelity's contracts with the Plan.

## II.     THE PARTIES

### A.     Plaintiff

16.     Korine Brown is an individual who resides in Kansas City, Missouri and is a participant in the GM Plan.

### B.     Defendants

17.     Fidelity Institutional Operations is a Massachusetts corporation which offers and provides trust services, recordkeeping and information management services for employee benefit plans.  Fidelity Institutional Operations is based in Boston, Massachusetts.

18.     Fidelity Research is a Massachusetts corporation which provides investment advisory services to Fidelity mutual funds.   Fidelity Research's Equity and High-Income Divisions are based in Boston, Massachusetts and the Fixed-Income Division is based in Merrimack, New Hampshire.  Fidelity Research manages mutual fund assets that total nearly $1.4 trillion.

## III.     JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA Section 502(e)(1)(2), 29 U.S.C. § 1132(e)(1)(2).

20.     Venue is proper in this judicial district pursuant to ERISA Section 502(e)(2), 29

U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, because Fidelity Institutional Operations and Fidelity

Research all have offices located in this District.

## IV.     BACKGROUND FACTS

### A.     Defendants Are Fiduciaries with Specific Duties

21.     Under ERISA § 3(21), 29 U.S.C. § 1002(21) a person is a fiduciary with respect

to a plan to the extent

> (i)     he exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets,

> (ii)     he renders investment advice for a fee or other compensation, direct or
> indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or

> (iii)     he has any discretionary authority or discretionary responsibility in the
> administration of such plan.

22.     Fidelity Institutional Operations is a servicer and record keeper to the Plan, which

has discretionary control over plan assets pending investment in the selected investment options,

transfers to new investment options, and distributions to participants.

23.     Defendants are functional fiduciaries to the Plan because they are given unfettered

authority and responsibility over the administration of Plan assets when contributions or

redemptions are held in temporary accounts.  Defendants, with no input or guidance from the

Plan or participants, decide how participants' contributions are handled and administered

pending investment in the selection option(s) or distribution to participants.   In addition,

Defendants exercised complete authority and control over the handling and use of the float interest earned on these contributions and redemptions pending transfer, redemption or investment.

24.     As such, at all times relevant to this Complaint, Defendants were fiduciaries of the Plan as defined by ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercised discretionary authority or control respecting management or disposition of assets and had discretionary authority or responsibility in the administration of the Plan.

25.     One of the ways that ERISA protects the interests of participants in employee benefit plans is by requiring that fiduciaries in qualified retirement plans abide by the duties of prudence and loyalty.

26.     ERISA requires a fiduciary to: "[D]ischarge its duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims [in accordance with the plan documents]."  ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

27.     Furthermore, the duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of:  (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).  This standard requires that all assets – such as interest on retirement plan accounts – be used for providing benefits to participants and their beneficiaries or defraying reasonable expenses of administering the plan.

28.     As a fiduciary, Fidelity Institutional Operations is liable to compensate the Plan for any losses that the Plan incurred due to the Defendants' breaches of fiduciary duty.  ERISA § 409(a), 29 U.S.C. § 1109(a).

29.     As a fiduciary, Fidelity Institutional Operations is also prohibited from dealing with the assets of the [Plan] in [its] own interest or for [its] own account."  ERISA § 406(b), 29 U.S.C. § 1106(b).

30.     Under ERISA, a party in interest includes "[a]ny fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan," "[a] person providing services to such plan" and parents and affiliates of the forgoing.

31.     Fidelity Institutional Operations is a party in interest as defined in section 3(14) of ERISA, 29 U.S.C. § 1002(3)(14), because it is a plan fiduciary and provides services to the Plan.

32.     Under ERISA, a party in interest also includes affiliates of a plan fiduciary and servicer under section 3(14) of ERISA.  29 U.S.C. § 1002(3)(14).

33.     Fidelity Research is a party in interest as defined in section 3(14) of ERISA, 29 U.S.C. § 1002(3)(14) because it is an affiliate of Fidelity Institutional Operations.

34.     As fiduciaries, Defendants are, among other things, prohibited from causing the Plan to engage in certain transactions with a party in interest, including transferring assets from the Plan to a party in interest.  ERISA § 406(a), 29 U.S.C. § 1106(a).

35.     As parties in interest, Defendants are prohibited from engaging in certain transactions with the Plan, including the transfer of assets from the Plan.  ERISA § 406(a), 29 U.S.C. § 1106(a).

36.     Fiduciary and parties in interest who cause or engage in prohibited transactions may be held liable under ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3).

**B.     Defendants Violated ERISA**

37.     Defendants violated ERISA through their handling of funds that were either being deposited to or withdrawn from the Plan, and used the float income generated from those funds to offset Fidelity's operating expenses, and for the benefit of Fidelity's mutual funds, instead of for the benefit of the Plan.

38.     Funds were either deposited into the Plan by employers or by the Plan's participants.  These funds were assets of the Plan under ERISA.

39.     The Court in *Tussey* described the discretionary process that Fidelity used when an employer made contributions to the relevant plan as follows:

a.      Contributions are transferred into a Depository Account.

b.      Each day at 1 o'clock and 4 o'clock in the afternoon, the contributions are transferred to a consolidated repurchase agreement account ("REPO Account").  The REPO Account is held at Deutsche Bank.  It pools funds from other Fidelity accounts, not only the Depository Account.

c.      Any contributions made after 4 o'clock are held in the Depository Account overnight.

d.      Funds transferred to the REPO Account, are then transferred to the FICASH Program ("FICASH").  FICASH is a process that invests the funds in overnight transactions.  Fidelity Research manages FICASH. Fidelity Research is a subsidiary of FMR LLC, which is the overall parent company of Fidelity.

e.       The following day, the principal in FICASH is returned to the REPO Account.

f.       The funds are then returned to the Depository Account.

g.       From the Depository Account, the funds are transferred to the investment options designated by plan participants.

Upon information and belief, the same process was followed in the Plan at issue here.

40.     Similarly, the Court in *Tussey* summarized the discretionary process that Fidelity used when a plan participant made contributions to the relevant plan as follows:

a.       Participants' contributions are first transferred into a regional bank account.

b.       The following day, these contributions are transferred into the Depository Account.

c.       Later that day, the funds are moved into one of three investment concentration accounts and then reflected in the books of the individual investment options.

Upon information and belief, the same process was followed in the Plan at issue here.

41.     Participants of the Plan also removed funds from the Plan.  These funds were assets of the Plan under ERISA.

42.     The Court in *Tussey* described the discretionary process that Fidelity used when a plan participant requested a disbursement as follows:

a.       The day after disbursements are triggered, funds move from their respective investment concentration accounts into a redemption bank

account at Deutsche Bank that is registered to Fidelity Institutional Operations for the benefit of the investment options.

b.      The IRS is paid any money due it the same day.

c.      Later that day, the remaining funds are transferred to the REPO Account.

d.      Funds are then transferred from the REPO Account to FICASH.

e.      The following day, the principal amount of those funds initially transferred to FICASH is transferred back to the redemption bank account.

f.      Depending on state tax remittance schedules, state taxes are then paid.

g.      Either on or after the same day that the redemption account receives funds back from the FICASH program, participants may receive electronic disbursements from the redemption bank account.

h.      If participants do not receive an electronic disbursement, the redemption bank account transfers funds to a disbursement bank account held at Deutsche Bank.  That account then issues a check to participants.

Upon information and belief, the same process was followed in the Plan at issue here.

43.      Participants of the Plan also moved funds from one investment option to another. These funds were assets of the Plan under ERISA.

44.      The Court in *Tussey* described the discretionary process that Fidelity used when a plan participant exchanged funds from one investment option to another, such as from Investment Option A to Investment Option B, as follows:

a.      Funds move from an account for Investment Option A to a Depository Account the day after a trade is placed.

b.      Funds are then transferred from the Depository Account to the account for

Investment Option B.

45.    In the process of making contributions or disbursements to or from the Plan, or

exchanging investment options, Fidelity generated interest as described by the Court in *Tussey*:

> Interest is earned when funds lie in the various accounts, exclusive of the
> REPO Account. Income is earned when funds in FICASH are invested in
> overnight secured vehicles.   Because only contribution principal is
> transferred back to the Depository Account following an overnight,
> interest is also earned on the income that remains in FICASH.  Both the
> income and interest earned on the contribution principal are included in
> the term "float income" or "float."

*Tussey* at 33.

46.    As used in this complaint, the term "float income" includes both the interest

earned on the principal and interest generated on income that remained in FICASH once the

principal was transferred.

47.    Fidelity uses this float income first to pay for the operating expenses that it incurs

in the processes described above in violation of the terms of its agreements with the Plan.  As the

Court explained in *Tussey*:

> All of the accounts in the process incur bank expenses.  Expenses incurred
> by the REPO Account are paid by "other accounts," and is not at issue.
> Interest earned in the remaining accounts are credited against any bank
> expenses incurred.  For example, the Depository Account is first credited
> with any interest earned by the account.  Remaining expenses are paid
> with float earned in FICASH.  Because maintaining these accounts are
> integral to the services rendered by Fidelity Trust, float income is being
> used to pay Fidelity Trust's operating expenses for recordkeeping and
> administering the Plan.  This means that Fidelity Trust is earning more
> income than the Trust Agreement provides: the Agreement specifies that
> Fidelity Trust would be paid through revenue sharing.

*Tussey* at 33.

48.    Fidelity engaged in self-dealing in violation of ERISA when it used float income

to pay operating expenses in the manner described in the preceding paragraph.

49.     Fidelity then distributed any remaining float income to participating Fidelity investment options rather than using the income solely for the benefit of the Plan's participants as described by the Court in *Tussey*:

> Any remaining float is then distributed pro rata among individual investment options that choose to receive it, and thus goes to the benefit of all shareholders of the investment option; i.e., interest generated by Plan assets are not disbursed solely to Plan participants and beneficiaries.  The decision that float income would ultimately be distributed to investment options was made by Fidelity Operations as it chose to register the bank accounts on behalf of the investment options.

*Tussey* at 34.

50.     Fidelity engaged in self-dealing in violation of ERISA when it transferred float income to the Plan's Fidelity investment options instead of the Plan, thereby increasing the investment management and other fees earned by Fidelity which are computed based upon a the amount of assets held by those funds.

51.     Regarding breach of fiduciary duties the *Tussey* Court found:

> … (3) Fidelity Trust breached its fiduciary duties to the Plan when it failed to distribute float income solely for the interest of the Plan; and (4) Fidelity Research violated its fiduciary duties when it transferred float income to the Plan's investment options instead of the Plan.

*Tussey* at 2.

52.     The *Tussey* Court further held that:  "Because Plan assets were distributed to investment options neither 'for the exclusive purpose of ... providing benefits to participants and their beneficiaries,' nor to defray administration costs for the Plan's benefit, Fidelity Research and Fidelity Trust breached their fiduciary duties of loyalty to the Plan." *Tussey* at 35.

53.     Fidelity's unlawful practice of retaining float income did not just victimize the plans at issue in *Tussey*, but it was widely employed by Fidelity for all of the defined

contribution plans that it services.  Fidelity has admitted that it handled the inflows and outflows of cash in the same manner for all of its plans.

54.     The Department of Labor has expressed the view that a trustee's exercise of discretion to earn income for its own account from the float attributable to outstanding benefit checks constitutes prohibited fiduciary self-dealing under section 406(b)(1) of ERISA.  DOL Advisory Opinion 93-24A.

55.     On information and belief, Fidelity was not authorized to retain the float income for its benefit, or the benefit of its mutual funds, under the terms of the agreements between Fidelity and the fiduciaries responsible for administering the Plan.

56.     On information and belief, Fidelity did not "provide full and fair disclosure regarding the use of float" to the fiduciaries responsible for the administration of the Plan. Specifically, Fidelity did not disclose the circumstances under which float will be earned and retained or the rate of the float or the manner it will be determined.

57.     Fidelity violated ERISA by distributing float income in the manner described in the preceding paragraph rather than using interest solely to benefit the Plan and their participants and without proper disclosure.

## V.     CLASS ACTION ALLEGATIONS

58.     This action is brought as a class action by Plaintiff, on behalf of herself and the following proposed class ("Class"):

> Employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 subject to Internal Revenue Code §§ 401(a), (k), for which Fidelity serves as trustee or service provider, and the participants in those plans.

59.     This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

60.   **Numerosity**.  While the exact number of Class members is not known, Plaintiff is informed and believed that Fidelity is the largest provider of 401(k) retirement plans in the nation.  As such, Plaintiff believes that the Class includes at least hundreds of plans, and that the participants in those plans number in the hundreds of thousands.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

61.   **Commonality**.  There are numerous questions of fact and/or law that are common to the Plaintiff and all the members of the Class, including, but not limited to the following:

a.   whether Defendants acted and continue to act as fiduciaries under ERISA in connection with the conduct described herein;

b.   whether float income is a plan asset under ERISA;

c.   whether Defendants violated their fiduciary duties under ERISA by first using float income to defray their operating expenses and then distributing remaining float income in such a manner that it did not solely benefit the plan that generated the income; and

d.   whether and what form of relief should be afforded to the Plaintiff and the Class.

62.   **Typicality**.  Plaintiff, who is a member of the Class, has claims that are typical of all of the members of the Class.  Plaintiff's claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable to all other members of the Class.

63.   **Adequacy of Representation**.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with or interests that

are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

64.   **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members.

65.   **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority of Class members are unaware of Defendants' breaches of fiduciary duty such that they will never bring suit individually.  Furthermore, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

66.   **Manageability**.  This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

67.   Defendants have acted on grounds generally applicable to the Class by uniformly misusing float income belonging to the Plan as described above, and Defendants clearly intend to continue such treatment of float income in the future. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

## COUNT I
### (For Breach of Fiduciary Duty)

68.   Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

69.     Defendants are fiduciaries under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), with respect to the float income because they have discretion and control, or exercise authority, with respect to the use and distribution of this income.

70.     Defendants control the processes, described above, for making contributions, disbursements, or exchanges to or from the Plan.

71.     Defendants control the use and distribution of float income generated through these processes.

72.     Defendants are prohibited from receiving such benefits in connection with their position as fiduciaries of the Plan.

73.     Float income generated by the processes described above are plan assets.

74.     Defendants' retention of float income and use of such income in a manner that did not solely benefit the plans that generated it violates their fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), in that Defendants failed and continue to fail to discharge their duties for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan.

75.     As a direct result of Defendants' breaches of duties, Plaintiff and the Class have suffered losses and damages.

76.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), 29 U.S.C. § 1132(a), Defendants are liable to restore to the Plan the losses they have suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation.

**COUNT II**
**(For Breach of Fiduciary Duty and Violation of ERISA's Prohibited Transaction Rules)**

77.     Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

78.     Defendants have engaged in and continue to engage in prohibited transactions in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1) by dealing with the float income generated by the Plan in its own interest or for its own account.

79.     Defendants have engaged in and continue to engage in prohibited transactions in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) by transferring float income for use by a party in interest.

80.     Pursuant to ERISA § 409(a), U.S.C. § 1109(a), and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Defendants are liable to the Plan to credit back, disgorge and/or make restitution of all float income received by them or their affiliates or transferred to anyone other than the Plan that generated the income.

81.     Plaintiff and the Class also are entitled to all equitable or remedial relief as the Court may deem appropriate and just.

82.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Class seeks an order declaring that the above-described practices of Defendants in connection with float income violate ERISA, as set forth above, and seeks a permanent injunction preventing Defendants from engaging in such conduct in the future.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the Class, demands judgment against Defendants for the following relief:

a.      Declaratory and injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) as detailed above;

b.      Disgorgement, restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to ERISA § 409(a), U.S.C. § 1109(a), and ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2);

c.      Pre judgment and post judgment interest at the maximum permissible rates, whether at law or in equity;

d.      Attorneys' fees, costs and other recoverable expenses of litigation; and

e.      Such further and additional relief to which Plaintiff and the Class may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all claims so triable.

## NOTICE PURSUANT TO ERISA § 502(h)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated: April 23, 2013                    Respectfully submitted,

**/s/ Thomas G. Shapiro**
Thomas G. Shapiro (BBO# 454680)
Michelle H. Blauner (BBO# 549049)
**Shapiro Haber & Urmy LLP**
53 State Street
Boston MA, 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
Email: tshapiro@shulaw.com
Email: mblauner@shulaw.com